IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SYDNEY MAYS,<br><br>      Plaintiff,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF<br>CORRECTIONS,<br>JEROD R. SCHANZ,<br>C/O GOLLIHER,<br>JOSHUA A. SCHOENBECK,<br>ANTHONY B. JONES,<br>MS. WALKER,<br>ANTHONY D. WILLS,<br>CLAYTON STEPHENSON, and<br>LATOYA HUGHES,<br><br>      Defendants. | Case No. 25-cv-01644-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  Plaintiff Sydney Mays, an inmate of the Illinois Department of Corrections who is currently incarcerated at Hill Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred at Menard Correctional Center. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

  Plaintiff alleges the following: On January 21, 2023, Plaintiff was subjected to "shakedown and strip search." (Doc. 1, p. 2). As a result of the shake down and strip search, Correctional Officer

Golliher claimed he found a piece of paper in the right pocket of Plaintiff's shorts. (*Id.*). Golliher suspected the paper to be drugs. (*Id.*). Following the strip search, Plaintiff was returned to his cell and provided no further information. (*Id.* at p. 3). The following day, January 22, 2023, Correctional Officer K informed Plaintiff that Plaintiff was on "deadlock," meaning that Plaintiff was confined to his cell. (*Id.*). Correctional Officer K stated that he did not know why Plaintiff was on deadlock but believed it had something to do with Internal Affairs. (*Id.*). Plaintiff remained on deadlock for the next fourteen days. (*Id.*).

On the fifteenth day, Plaintiff again spoke to Correctional Officer K seeking information about why he was on deadlock. (Doc. 1, p. 3). Correctional Officer K tried to find answers but with "no luck." (*Id.*). Although Plaintiff was on deadlock, Correctional Officer K allowed Plaintiff to shop at the commissary. (*Id.*).

On March 9, 2023, forty-six days following the confiscation of the piece of paper, Plaintiff was taken to segregation and issued a disciplinary report written by Internal Affairs Officer Jerod Schanz. (Doc. 1, p. 3). Plaintiff recounts that the disciplinary report recorded that a piece of paper was discovered by Golliher in the pocket of Plaintiff's shorts and that the paper was tested at the facility and "returned a preliminary positive for synthetic cannabinoids." (*Id.* at p. 3, 16). The paper was then sent to the state lab for further testing, and on March 8, 2023, the Illinois State Police Crime Lab confirmed the facility's preliminary findings. (*Id.* at p. 4, 16).

Plaintiff was found guilty of a "203 drug or drug paraphernalia charge" and sanctioned with six months in segregation, six months loss of visitation privileges, and six months of commissary restrictions. (Doc. 1, p. 4). Plaintiff asserts that Schanz denied him due process by investigating him without notifying him of the nature of the investigation "within the allotted time as set forth in IDOC Rule book (DR 504)." (*Id.*). Schanz also served Plaintiff with the disciplinary report approximately twenty-nine days after the "allotted time as set forth in the DR 504.30(d)(e)."

(*Id.*). Schanz was required under department regulations to issue Plaintiff the disciplinary report within eight days of alleged offense. (*Id.*).

At the disciplinary hearing, Plaintiff informed Schoenbeck, Jones, and Walker, the members of the Adjustment Committee, that the facts alleged by Golliher in the disciplinary report were fabricated. (Doc. 1, p. 8). Plaintiff explained that prior to the incident on January 21, 2023, he had previously been sent a letter from someone he did not know and that the letter was believed by Internal Affairs to have contained drugs. (*Id.*). He states he did not sign for the letter and never had it in his possession, so Internal Affairs was unable to "write him up" for the letter. (*Id.*). Because he never took possession of the letter, Internal Affairs was upset with him and fabricated the current disciplinary report as a form of retaliation. (*Id.*). Plaintiff states that in reaction to his explanation the Adjustment Committee Members laughed at him. (*Id.*). Schoenbeck stated that he, Schoenbeck, was not a "thug hug," meaning that he did not allow inmates to "beat tickets." (*Id.* at p. 9). Plaintiff asserts that he is innocent of the disciplinary report. (*Id.* at p. 8).

Plaintiff describes the six months in segregation as the worst six months of his life. (Doc. 1, p. 5). He was denied "contact to the outside world" and was not allowed access to any electronic mail or the law library. (*Id.* at p. 5-6). He was not provided adequate medical treatment because medical staff engaged in deliberate indifference to the medical needs of the inmates in segregation. (*Id.* at p. 6). Plaintiff was given smaller portions of food and denied mental health treatment and outside yard time. (*Id.*). He was housed in close proximity to seriously mentally ill inmates who would kick the doors, yell, and slam boxes for up to twelve hours a day. (*Id.*). Plaintiff was forced to sleep with an illuminated LED light four feet away from him, making it difficult to sleep. (*Id.*). His cell had feces smeared on the walls from the previous occupant, and he was denied cleaning supplies for the entire six months. (*Id.* at p. 7). During this time, Plaintiff experienced extreme mental distress and contemplated suicide. (*Id.*).

**PRELIMINARY DISMISSALS**

The Illinois Department of Corrections is not a "person" subject to suit for money damages under Section 1983. *Thomas v. Ill.*, 697 F.3d 612, 613 (7th Cir. 2012). Neither can a state agency be sued for prospective injunctive relief in federal court. *See Quick v. Ill. Dep't of Fin. & Prof'l Regulation*, 468 F. Supp. 3d 1001, 1009 (N.D. Ill. June 23, 2020) (collecting cases). Accordingly, the Illinois Department of Corrections is dismissed as a defendant.

The Court also dismisses any claims against Clayton Stephenson, a member of the Administrative Review Board, and Director Latoya Hughes. Stephenson and Hughes's involvement in the alleged deprivation of Plaintiff's constitutional rights is limited to their review and denial of his grievances. Mere receipt of grievances from a prisoner, however, is usually insufficient to establish liability. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of Owens's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). Stephenson and Hughes cannot be held liable simply because Plaintiff believes they mishandled and improperly denied his grievances. Accordingly, they will be dismissed as defendants in this lawsuit.

**DISCUSSION**

Based on the allegations and Plaintiff's articulation of his claims in the Complaint, the Court designates the following count:

> **Count 1:** Fourteenth Amendment claim against Schanz, Golliher, Schoenbeck, Jones, Walker, and Wills for punishing Plaintiff without due process of law.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the**

**Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

Plaintiff claims that because of Internal Affairs' animus towards him, Schanz issued him a disciplinary report based on Golliher's false assertions that he found a piece of paper on Plaintiff's person, which tested positive for drugs. Subsequently, the Adjustment Committee, composed of Schoenbeck, Jones, and Walker, found him guilty of the disciplinary report and sanctioned him with six months in segregation and six months of commissary and contact visit restrictions. Warden Wills then affirmed the findings and the recommended sanctions of the Adjustment Committee. Plaintiff asserts that Defendants disregarded his due process rights. (Doc. 1, p. 9).

A Fourteenth Amendment due process claim challenging a prison disciplinary proceeding requires a plaintiff to show: (1) a constitutionally protected liberty interest; and (2) deficient procedures in connection with the deprivation of that interest. *Lisle v. Welborn*, 933 F.3d 705, 720 (2019); *Wilkinson v. Austin,* 545 U.S. 209, 220-21 (2005). The question is "whether a protected liberty interest exists, and if so, whether [Plaintiff] received adequate process to protect it." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024).

A prisoner's liberty interest is implicated by prison discipline that "imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ealy,* 109 F.4th at 964 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). To show a hardship sufficient to create a protected liberty interest, an inmate must demonstrate that his punishment was a dramatic departure from basic conditions of prison life. *See Sandin*, 515 U.S. at 486; *Lisle,* 933 F.3d at 721 ("If the disciplinary measures do not 'substantially worsen the conditions of confinement' of an inmate, then he has not been deprived of a protected liberty interest.") (quoting

---

[1] *See Bell Atlantic Corp.,* 550 U.S. at 570.

*Miller v. Dobier*, 634 F.3d 412, 414–15 (7th Cir. 2011)). When analyzing whether disciplinary segregation implicates a protected liberty interest, courts consider "the 'combined import of the duration of the segregative confinement and the conditions endured.'" *Ealy,* 109 F.4th at 965 (quoting *Hardaway v. Meyerhoff,* 734 F.3d 740, 743 (7th Cir. 2013)).

A demotion to C-grade status and a loss of commissary and visitor privileges do not amount to a deprivation of a protected liberty interest that required due process. *See, e.g., Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (collecting cases). *See also Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992) *cert. denied*, 507 U.S. 928 (1993) (no constitutional right to compensation while incarcerated); *Garza v. Miller*, 688 F.2d 480, 485-86 (7th Cir. 1982), *cert. denied* 459 U.S. 1150 (1983) (no constitutional right to employment). Thus, Count 1 is dismissed as to Plaintiff's claim he was denied due process prior to the deprivation of these privileges.

Plaintiff's segregation stay, however, could implicate a protected liberty interest. Plaintiff claims that for six months he was (1) kept in a dirty cell exposed to feces and not provided cleaning supplies; (2) subjected to continuous illumination; (3) housed near seriously mentally ill inmates who would kick their doors, yell, and slam boxes for up to twelve hours a day; (4) fed small portions of food; (5) not allowed out of the cell; and (6) denied access to medical and mental health care. (Doc. 1, p. 6-7). At this point, Plaintiff has sufficiently pled that his time in segregation rose to an "atypical and significant hardship" depriving him of a liberty interest.

Plaintiff also has alleged sufficient facts to establish at the pleading stage that the process he was afforded was constitutionally deficient. Because Plaintiff was sanctioned with disciplinary segregation, he was entitled to only informal due process. *Ealy*, 109 F.4th at 965 (quoting *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024)). This requires that an inmate is provided only "some notice" of the reasons for the inmate's placement in segregation, an opportunity to present his views in a written statement or hearing, and a review by an impartial decision maker of the charges

and the available evidence. *Ealy*, 109 F.4th at 966 (citing *Adams*, 91 F.4th at 895); *Westefer v. Neal*, 682 F.3d 679, 684, 685 (7th Cir. 2012); *Alston v. DeBruyn,* 13 F.3d 1036, 1042 (7th Cir. 1994).

Plaintiff states that during the hearing the members of the Adjustment Committee, Schoenbeck, Jones, and Walker, laughed at him when he gave his version of events. (Doc. 1, p. 8). Plaintiff also claims that Schoenbeck described himself as someone who does not allow inmates to "beat tickets." (*Id.* at p. 9). These allegations combined with Plaintiff's assertions that his finding of guilty was "systemic" allows the plausible inference that Defendants had prejudged Plaintiff's guilt, and his disciplinary report was not reviewed by an impartial decision maker. "Due process forbids a hearing officer from predetermining…the outcome of a disciplinary hearing." *Evans v. Matushak,* No. 25-1887, 2026 WL 475063, at *3 (7th Cir. 2026) (citing *Prude v. Meli,* 76 F 4th 648, 658 (7th Cir. 2023)). Therefore, Count 1 will be able to proceed against Schoenbeck, Jones, and Walker.

Plaintiff has stated a claim against Golliher and Schanz to the extent Plaintiff alleges that the March 9, 2023 disciplinary report was based on fabricated information. Plaintiff asserts that Golliher falsely claimed that he found the piece of paper in Plaintiff's shorts and that Internal Affairs, which includes Schanz, was the "cause" of the subsequent disciplinary report because Plaintiff had "upset" Internal Affairs. (Doc. 1, p. 2, 8). While a false disciplinary report, on its own, does not violate due process, *see Hadley v. Peters,* 941 F. Supp. 850, 856 (C.D. Ill. 1994) (citation omitted), Plaintiff has successfully alleged that he was not afforded due process, and so Count 1 will proceed against Golliher and Schanz.

Count 1 is dismissed against Jerod Schanz, however, to the extent Plaintiff claims that Schanz failed to follow certain state regulations during the investigation and in issuing the disciplinary report. Plaintiff asserts that Schanz denied him due process by not informing him of

the nature of the investigation. Plaintiff states that he was never presented with an investigative report, as required pursuant to Section 504.30 of the Illinois Administrative Code, or even informed that he was under investigation. (Doc. 1, p. 4-5). Plaintiff also claims that Schanz did not serve him with the disciplinary report within the time specified in the department regulations, which is within "eight calendar days after the commission of an offense or the discovery of an offense." (*Id.* at p. 4) (quoting 30 ILL. ADMIN CODE 504.30). Plaintiff argues that Schanz should have issued him the disciplinary report within eight days of the preliminary positive test of the piece of paper, rather than waiting until receiving the confirmed results from the state crime lab. (*Id.* at p. 5).

The fact that Schanz did not provide Plaintiff with an investigative report or serve him with the disciplinary report in accordance with state regulations does not violate constitutional due process requirements. "There is no independent constitutional right to a disciplinary proceeding that complies with prison administrative procedures." *Porras v. Tarr,* No. 13-cv-3368, 2015 WL 5950422, at *6 (N.D. Ill. 2015) (citing *Whitman v. Nesic,* 368 F.3d 931, 935 n.1 (7th Cir. 2004) ("Regardless of a plaintiff's insistence that a defendant failed to follow state law, the mere fact that state rules or statutes are violated does not in and of itself amount to a constitutional violation or give rise to an actionable § 1983 claim."); *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) (section 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations)). Because Schanz's conduct regarding lack of notice of the pending investigation and late issuance of the disciplinary report only violated the Illinois Administrative Code, these assertions do not state a constitutional claim.

Count 1 is dismissed in its entirety against Warden Wills. Plaintiff claims that Wills "signed off on [his] ticket that was present in violation of [his] due process and he agreed in denying [his] relief when [he] wrote a grievance pertaining to the above mentioned violation." (Doc. 1, p. 9).

Based on these sparse assertions, the Court cannot plausibly infer that Wills was aware that Plaintiff's hearing before the Adjustment Committee had been constitutionally deficient and "approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Vance v. Peters,* 97 F. 3d 987, 993 (7th Cir. 1996).

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Schanz, Golliher, Schoenbeck, Jones, and Walker and is dismissed without prejudice as to Wills, Stephenson, and Hughes. The Illinois Department of Corrections is dismissed with prejudice. The Clerk of Court **SHALL TERMINATE** Wills, Stephson, Hughes, and the Illinois Department of Corrections as parties on the docket.

Because Plaintiff asserts that his time in segregation impacted his physical and mental health, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Schanz, Schoenbeck, Jones, Walker, and Wills the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint and this Memorandum and Order to Defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his or her last known address. This information shall be used only for sending the forms as directed

above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 24, 2026**

                *s/Stephen P. McGlynn*
                **STEPHEN P. MCGLYNN**
                **United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.